

1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                      **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JIMMY LEE DAVIS,                    No. CV 13-07062 SS

12              Plaintiff,

13       v.
                                         **MEMORANDUM DECISION AND ORDER**
14   CAROLYN W. COLVIN,
     Commissioner of the Social
15   Security Administration,

16              Defendant.

17

18

19

20

21

22

23

24

25

26

27   \\

28   \\

**I.**

**INTRODUCTION**

Jimmy Lee Davis ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits and Supplemental Security Income. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**II.**

**PROCEDURAL HISTORY**

Plaintiff Jimmy Lee Davis filed applications for Title II Disability Insurance Benefits ("DIB") on June 12, 2010 and Title XVI Supplemental Security Income ("SSI") on June 30, 2010. (Administrative Record ("AR") 33). In both applications, Plaintiff alleged a disability onset date of August 1, 2009. (Id.). The Agency denied Plaintiff's applications on December 27, 2010, (id.), and upon reconsideration on April 12, 2011. (Id.). On May 31, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id.). Plaintiff appeared and testified at a hearing held before ALJ Edward C. Graham on March 28, 2012. (Id.). On April 6, 2012, the ALJ issued a decision denying DIB and SSI, and finding Plaintiff not disabled. (AR 40). Plaintiff requested review of the ALJ's decision, which the

Appeals Council denied on July 17, 2013.  (AR 1-3).  Plaintiff filed this instant action on September 24, 2013.

### III.

### FACTUAL BACKGROUND

Plaintiff was born on November 23, 1960.  (AR 144).  He was forty-eight years old on the alleged disability onset date and fifty-one years old at the time of the hearing.  (AR 38-39).  Plaintiff completed high school and one-year of college.  (AR 38-39, 163).  Plaintiff alleges that he could not engage in substantial gainful activity after August 1, 2009, due to diabetes, hypertension, peripheral neuropathy, tingling on both feet, numbing on both feet, and pain in his right shoulder.  (AR 162).[1]  Plaintiff sought treatment for his conditions in September 2009. (AR 210-16).

**A.   Medical History And Treating Doctors' Opinions**

Throughout the period from September 2009 to June 2010, Plaintiff visited South Valley Health Center ("South Valley") for treatment for diabetes mellitus, peripheral neuropathy, hyperlipidemia, and hypertension.  (AR 210-16).  On September 9, 2009, Dr. C. Chandradas treated Plaintiff at South Valley.  (AR 210).  In the September 9, 2009 report, it was noted: "48 yr male

---

[1]   In his application, Plaintiff stated that he stopped working on July 31, 2009, because he moved to California.   He then stated that his disability stopped him from working as of August 1, 2009.  (AR 162).

here requesting RF on med. Sts he does not take b/p med – zesterol 2 to making him feel week and tired.  Pt. not monitoring MG BS test strips not seen x 1 yr at this facility." (Id. ). For "condition on discharge," the report was "improved." (Id.). On December 29, 2009, Dr. Violeta Vallejo-Sinavaky treated Plaintiff at South Valley again, noted that the patient did not keep his last appointment, was there for medication refill, and indicated that Plaintiff's condition remained unchanged from his previous visit.  (AR 211).  Plaintiff's doctors at South Valley prescribed him Glucophage, Zocor and Lotensin.[2]  (AR 210-16). Plaintiffs medical records from late 2009 do not indicate that he suffered any disabling limitations due to his pain.  (Id.).  In Plaintiff's "Detailed Patient Chart Summary Report," the report indicated that Plaintiff's main reason for his visit was "medication refill" and "Test Results."  (AR 212).  The report did indicate shoulder pain and also identified a history of substance abuse.  (Id.).  In response to the question regarding "Current [substance abuse] (how long)" the report indicated "occasionally" (sic).  (AR 212).

A "Detailed Patient Chart Summary Report" in the records reflects examinations from June 22, 2010 to June 23, 2010.  The doctors treating and examining Plaintiff found that Plaintiff was "alert" and in "no acute distress" during his visits.  (AR 213). Plaintiff informed Dr. Shahid O. Khan, a South Valley physician,

---

[2]  The records do not indicate the purpose of each medication. However, Glucophage is used for the treatment of Type 2 diabetes, Zocor is used to lower cholesterol, and Lotensin is used to treat high blood pressure (hypertension).

that he felt "well."   (AR 213).   In response to the question regarding "Patient complains of pain", the answer was "no."  (AR 213).

On June 17, 2012, over two months after his hearing before the ALJ, Plaintiff visited South Valley and received treatment from Dr. Jon Fong for a dog bite that caused "some stiffness to [his] finger[sic]."  (AR 276).  Dr. Fong found that Plaintiff was alert and oriented with no acute distress.  (Id.).  On July 2, 2012, Plaintiff saw Dr. Khan for a routine follow-up.  (AR 277). Under the section of the report entitled "Chief Complaint/Reason for Visit," the report indicated "Pt feels well."  (AR 277). During the examination, Plaintiff was alert, displayed no acute distress, and showed no signs of clubbing, cyanosis or edema in his extremities.  (AR 278).  Dr. Khan recommended that Plaintiff "participate in at least 30 minutes of moderate exercise (such as brisk walk) for five or more day each week."  (AR 279).

**B.   Consultative Doctor's Report**

On December 13, 2010, Plaintiff underwent a consultative orthopedic examination performed by Dr. Rajeswari Kumar.  (AR 217-22).  Plaintiff reported that after falling off a fan at work in June 2002, he began to experience back pain.  (AR 217). Plaintiff claimed that although he did not report the accident to his employer or receive any treatment for his alleged injury, his resulting back pain radiated "down to both lower extremities." He also reported experiencing numbness and paresthesia in his

5

lower extremities and lower right hand, as well as pain in his feet due to his diabetes. (AR 218).

During his examination of Plaintiff, Dr. Kumar reported that Plaintiff was able to "sit[] and stand[] with normal posture." (AR 219). Plaintiff sat comfortably with no tilt or list, his gait was normal, and he did not require any assistive devices to walk. (Id.).

With respect to Plaintiff's back, Dr. Kumar found that Plaintiff's spinal contour was normal. Although Plaintiff experienced "tenderness in the lumbar paraspinal region," he had "no pain with the range of motion and no pain with axial rotation of the trunk." (Id.). The range of motion for Plaintiff's shoulders, elbows, wrists, hands, hips, knees, and ankles were within normal limits, (AR 220), and x-rays showed that Plaintiff's lumbar spine was normal with normal intervertebral disk spaces. (AR 221). Dr. Kumar diagnosed Plaintiff with low back pain without radiculopathy, diabetes, peripheral neuropathy and right rotator cuff tendonitis. (Id.).

Based on his findings and diagnosis, Dr. Kumar determined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, and stand and walk six hours in an eight-hour working day with proper supportive shoes and without an assistive device. (AR 222). Plaintiff could perform "frequent overhead activity with the right upper extremity and [had] no limitation with overhead activity with the left upper

extremity." (Id.).  Plaintiff had no limitation with gripping or fine manipulative activities.  (Id.).  Plaintiff had no problem with kneeling and climbing activities.  (Id.).

**C.   Non-Examining   Doctor's   Opinion   Regarding   Plaintiff's Physical and Mental Conditions**

On December 23, 2010, Dr. G. Jansen completed a Physical Residual Functional Capacity Assessment of Plaintiff ("RFC") based on a review of Plaintiff's medical records and the consultative report.  (AR 225-32).  Dr. Jansen found that Plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk for six hours, sit for six hours, and push and/or pull with limitation in the right upper extremities.  (AR 226). Furthermore, although Plaintiff was limited in reaching all directions, he had no issues with gross manipulation, fine manipulation and feeling in his skin receptors.  (Id.). Additionally, Plaintiff had no problems climbing, balancing, stooping, kneeling, crouching or crawling.  (AR 228). Furthermore, Dr. Jansen found that Plaintiff had no manipulative, visuald, communicative or environmental limitations.  (AR 228-29).  Dr. Jansen concluded that "the severity of the alleged impairments [was] not supported by the objective physical evidence."  (AR 230).  The assessment noted that the medical evidence in the file was "equal to a Medium RFC."  (AR 232).
\\
\\

1  **D.    Vocational Expert Testimony**

2

3          Vocational  Expert  ("VE")  Gregory  Jones  testified  regarding

4  the  existence  of  jobs  in  the  national  economy  that  Plaintiff

5  could  perform  given  his  physical  limitations.   (AR 51-54).   The

6  ALJ  asked  the  VE  to  consider  Plaintiff's  age,  education,  work

7  experience,  and  the  physical  limitations  that  Drs.  Kumar  and

8  Jansen  identified.   (AR 52).   The  VE  testified  that  an  individual

9  with  Plaintiff's  age,  education,  experience  and  mental  and

10  physical  limitations  would  be  able  to  perform  work  as  a  bus

11  person,  industrial  cleaner,  general  cashier,  and  cafeteria

12  attendant.   (AR 52-53).   The  VE  opined  that  these  jobs  existed  in

13  significant  numbers  in  the  national  and  local  economy,  and  he

14  provided  specific  job  numbers  for  each  occupation.   (Id.).    The

15  VE  also  stated  that  there  were  no  jobs  for  an  individual  with

16  these  limitations  who  was  also  limited  to  standing  for  only  a

17  half-hour  at  a  time.   (AR 54).

18

19  **E.    Plaintiff's Exertion Questionnaire**

20

21          On  September  17,  2010,  Plaintiff  completed  an  Exertion

22  Questionnaire  (the  "Exertion  Questionnaire").   (AR 176-78).

23  According  to  Plaintiff,  he  was  "fatigued  all  the  time"  and  had

24  "to  deal  with  the  pain  all  day  long."  (AR 176).   However,  he

25  also  stated  that  he  performed  several  chores  at  home,  which

26  included  making  the  bed,  vacuuming,  washing  dishes,  cleaning  the

27  bathroom,  watering  the  yard,  doing  some  yard  work,  and  going

28  grocery  shopping.   (AR 176-77).   Some  of  these  activities,  like

vacuuming, washing dishes, completing yard work and cleaning the bathroom, would take two to three hours a day. (AR 177). In addition, Plaintiff lifted groceries, pots and pans, hand tools, as well as sheets and towels "when needed during the day." (Id.). Plaintiff would also go grocery shopping once or twice a week. (Id.).

Furthermore, Plaintiff acknowledged that he walked several miles during the day for about two hours or more. (AR 176). Plaintiff stated that after walking he sometimes did not feel well, but on "other days," the exercise helped his condition. (Id.). Plaintiff would climb two flights of stairs even though it sometimes caused fatigue. (AR 177). In addition, Plaintiff explained that he could drive for one hundred miles at one time. (Id.).

## F.  **Plaintiff's Testimony**

Plaintiff testified that he had not engaged in substantial gainful employment since August 2009 because he experienced "prolonged periods of fatigue" and pain in his right leg. (AR 48). He further stated that his feet went numb because of his diabetes and that standing for prolonged periods of time made his pain worse. (Id.). Plaintiff further explained that he could only stand for half-hour before "things start to go awry." (AR 49). The ALJ asked Plaintiff if there was anything that would relieve his pain, but Plaintiff stated that the doctor prescribed him Motrin that did not help. (Id.). Plaintiff testified that

he had some pain in his lower back and right leg. (Id.). When the ALJ asked if the pain was constant or intermittent, Plaintiff responded that his leg pain was constant and that his leg hurt during the hearing. (Id.). Plaintiff believed that his fatigue arose from his diabetes. (AR 50). The ALJ asked Plaintiff about any weight loss, and Plaintiff stated that he lost approximately thirty pounds in about a year-and-a-half, although his eating habits remained the same. (AR 50). Plaintiff stated that he spent most of his time reading or watching TV, (id.), and he further explained that he would lie down for several hours throughout the day in order to relieve his pain. (AR 51). When the ALJ asked about Plaintiff's problem with his right shoulder, Plaintiff stated that he had a torn ligament in his rotor cuff caused by an old baseball injury. (Id.). Plaintiff alleges that he cannot lift too much weight with his right arm. (Id.).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists

10

in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920. The steps are:

> (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.
>
> (4) Is the claimant capable of performing his past work?  If so, the claimant is found not disabled. If not, proceed to step five.
>
> (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

1    The claimant has the burden of proof at steps one through
2    four, and the Commissioner has the burden of proof at step five.
3    Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an
4    affirmative duty to assist the claimant in developing the record
5    at every step of the inquiry.  Id. at 954.  If, at step four, the
6    claimant meets his burden of establishing an inability to perform
7    past work, the Commissioner must show that the claimant can
8    perform some other work that exists in "significant numbers" in
9    the national economy, taking into account the claimant's residual
10   functional capacity ("RFC"), age, education, and work experience.
11   Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20
12   C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do
13   so by the testimony of a vocational expert or by reference to the
14   Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404,
15   Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock
16   v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant
17   has both exertional (strength-related) and non-exertional
18   limitations, the Grids are inapplicable and the ALJ must take the
19   testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864,
20   869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335,
21   1340 (9th Cir. 1988)).

22                              **V.**

23                     **THE ALJ'S DECISION**

24

25   The ALJ employed the five-step sequential evaluation process
26   and concluded that Plaintiff was not under a disability within
27   the meaning of the Social Security Act from June 30, 2010 through
28   the date of the ALJ's decision on April 6, 2012.  (AR 40).  At

step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since August 1, 2009. (AR 35). At step two, the ALJ found that Plaintiff had severe impairments of a disorder in the back, diabetes mellitus, and peripheral neuropathy. (Id.). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.). The ALJ then found that Plaintiff had "the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567© and 416.967©." (AR 36). In making this finding, the ALJ considered all symptoms and the extent to which these symptoms could reasonably be "consistent with the objective medical evidence and other evidence." (AR 36). The ALJ gave considerable weight to the medical records provide by South Valley. (AR 37). The ALJ noted that the medical records "did not substantiate the [Plaintiff's] allegations of disabling limitations." (Id.).

The ALJ also gave substantial weight to Dr. Kumar's December 2010 consultative orthopedic evaluation. (Id.). The ALJ found that although Plaintiff had tenderness on the rotator cuff, there were no limitations to the range of motion of his right shoulder. (Id.). Moreover, even with reduced grip strength in his right hand, Plaintiff had no restrictions on the range of motion on his fingers and he had a normal grip. (Id.). The ALJ stated that there was no evidence that Plaintiff's impairment would be "so severe for a continuous period of [twelve] months." (Id.). \\

Finally, the ALJ noted that the records do not show any treatments directed toward Plaintiff's complaints.

The ALJ also gave substantial weight to the December 23, 2010 RFC form completed by Dr. Jansen. (Id.). Dr. Jansen agreed with Dr. Kumar's findings. (AR 38). Also, a MRI scan from January 2012 revealed multi-level disc degeneration, small anterior annular fissure, no posterior fissure, multi-level lumbar facet arthritis, and no evidence of disc herniation, canal stenosis or focal nerve root compression. (Id.). The ALJ stated that the medical evidence did not support the fact that Plaintiff could not work on a regular and continuing basis for a period of twelve-months. (Id.).

The ALJ afforded little weight to Plaintiff's subjective testimony because he found Plaintiff was not entirely credible. (AR 37). Although Plaintiff complained about fatigue, the ALJ noted that, in Plaintiff's Exertion Questionnaire, Plaintiff admitted engaging in daily activities that included cleaning the house, making the bed, vacuuming, washing dishes, doing yard work, and grocery shopping. (Id.). Furthermore, the medical evidence did not support Plaintiff's testimony. (AR 37-38). Finally, the ALJ noted that, after careful observation of Plaintiff at the hearing, Plaintiff's demeanor was not "suggestive of a person who is experiencing disabling limitations." (Id.). Plaintiff could enter and exit the hearing room without trouble and answer questions thoroughly and clearly. (Id.). Based on all the evidence, the ALJ found the Plaintiff's

"subjective complaints and alleged limitations [were] not fully persuasive." (Id.).

At step four, the ALJ determined that Plaintiff could not perform past relevant work. (Id.). At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC. (AR 39). Plaintiff was forty-eight years old on the alleged disability onset date of October 1, 2000, but changed age category to closely approaching advanced age pursuant to 20 C.F.R. 404.1563. and 416.963. (Id.). Plaintiff had at least a high school diploma, and was able to communicate in English. (Id.). Because Plaintiff's past relevant work was unskilled, the transferability of job skills was not an issue. (Id.).

Next, based on the testimony of VE Gregory Jones, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (Id.). The ALJ concluded that Plaintiff could perform the full range of medium work that included a bus person, an industrial cleaner, or a cafeteria attendant. (Id.). The ALJ further determined that such jobs existed in significant numbers in the local and national economy. (Id.).

\\
\\
\\
\\
\\

1

## VI.

2

### STANDARD OF REVIEW

3

4       Under 42 U.S.C. § 405(g), a district court may review the

5  Commissioner's decision to deny benefits.  The court may set

6  aside the Commissioner's decision when the ALJ's findings are

7  based on legal error or are not supported by substantial evidence

8  in the record as a whole.  Aukland v. Massanari, 257 F.3d 1033,

9  1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen

10   v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v.

11  Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

12

13       "Substantial evidence is more than a scintilla, but less

14  than a preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson

15  v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant

16  evidence which a reasonable person might accept as adequate to

17  support a conclusion."  Id. (citing Jamerson, 112 F.3d at 1066;

18  Smolen, 80 F.3d at 1279).  To determine whether substantial

19  evidence supports a finding, the court must "'consider the record

20  as a whole, weighing both evidence that supports and evidence

21  that detracts from the [Commissioner's] conclusion.'"  Aukland,

22  257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th

23  Cir. 1993)).  If the evidence can reasonably support either

24  affirming or reversing that conclusion, the court may not

25  substitute its judgment for that of the Commissioner.  Reddick,

26  157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457

27  (9th Cir. 1995)).

28  \\

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VII.**

**DISCUSSION**

Plaintiff challenges the ALJ's decision on four grounds. However, the gravamen of each proffered basis for relief is the same: that the ALJ impermissibly rejected Plaintiff's subjective symptom testimony without providing clear and convincing reasons supported by substantial evidence. (Memorandum in Support of Plaintiff's Complaint ("MSPC") at 4-12). First, Plaintiff argues that the ALJ improperly discredited his (Plaintiff's) subjective testimony and statements based solely on the objective medical evidence in the administrative record. (Id. at 9-10). Second, Plaintiff claims that the ALJ incorrectly assessed his RFC before considering his testimony and statements concerning the frequency and intensity of his symptoms. (Id. at 6-7). Third, Plaintiff contends that the ALJ did not adequately consider the Exertion Questionnaire. (Id. at 7-8). Fourth, Plaintiff asserts that the ALJ should not have considered Plaintiff's overall demeanor at the hearing because Plaintiff's hearing lasted only ten minutes. (Id. at 10-11).

The Court disagrees with Plaintiff's contentions. Accordingly, for the reasons discussed below, the ALJ's decision is AFFIRMED.

\\

\\

\\

\\

**The ALJ Provided Clear And Convincing Reasons Supported By Substantial Evidence For Finding Plaintiff's Subjective Testimony Less Than Fully Credible**

Plaintiff contends that the ALJ erred by failing to articulate clear and convincing reasons for rejecting Plaintiff's subjective testimony. (MSPC at 4). The Court disagrees. The ALJ's decision contains extensive citation to and discussion of clear and convincing reasons for rejecting Plaintiff's testimony.

When assessing the credibility of a claimant, the ALJ must engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. (Id.). Then, if there is, in order to reject the testimony, the ALJ must make specific credibility findings. (Id.). In assessing the claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." Turner v. Comm'r of Soc. Sec. Adm., 613 F.3d 1217, 1224 (9th Cir. 2010) (internal quotations omitted). The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately or unexplained failure to pursue treatment or follow treatment. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Additionally, the ALJ may discredit the claimant's testimony where his normal activities can transfer to the work setting. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Moreover, although an ALJ cannot base his decision on the fact that there were no visible external symptoms at the hearing,

an ALJ can use observations at the hearing to find reject a claimant's subjective testimony.  See Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).  Here, there was medical evidence of an underlying impairment.  However, the ALJ articulated specific, clear and convincing reasons for discounting Plaintiff's testimony about the severity of his condition.

### 1.   The ALJ Properly Considered The Medical Evidence When Determining Plaintiff's Credibility.

First, the ALJ properly cited inconsistencies between Plaintiff's testimony and the objective medical evidence to discredit Plaintiff's subjective testimony.   The Court notes it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).  However, an ALJ may consider such inconsistencies as one factor, among many, bearing on the credibility of a plaintiff's subjective testimony.  See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-60 (9th Cir. 2002) (ALJ properly considered the lack of objective medical evidence, as well as other factors, in evaluating the credibility of a plaintiff's subjective testimony regarding the severity of his impairments and pain); Morgan, 169 F.3d at 599-600 (same).

Here, the ALJ noted numerous inconsistencies that called into doubt the degree of physical pain and fatigue that Plaintiff

alleged.  (AR 37-38). Regarding Plaintiff's physical impairments, the ALJ noted that the medical records from his treating physicians, Plaintiff received intermittent treatment for diabetes mellitus, peripheral neuropathy, hyperlipidemia, and hypertension.  (AR 37) (citing AR 210-16).  However, the medical records do not show significant treatment for Plaintiff's alleged symptoms, such as extreme pain in his right leg and back.  (Id.). Moreover, on January 23, 2012, a "lumbar spine MRI scan revealed multi-level disc degeneration, small anterior annular fissure L4-5 level, no posterior fissure, multi-level lumbar facet arthritis, and no evidence of disc herniation, canal stenosis or focal nerve root compression."  (AR 38) (citing AR 271-73).  When considering this medical evidence, there was no support that Plaintiff could not work on a regular and continuing basis for a period of 12-months.  (Id.).

The ALJ also carefully reviewed the consultative orthopedic evaluation.  (AR 37).  Although Plaintiff had some orthopedic problems, Dr. Kumar assessed that Plaintiff could "lift and carry 25 pounds frequently and 50 pounds occasionally; stand and walk for 6 hours in an 8-hour workday without assistive device with proper supportive shoes; frequently perform overhead activity with the right upper extremity and no limitation with overhead activity with the left upper extremity."  (Id.) (citing AR 217-22).  Although Plaintiff claims that he had trouble standing for long periods of time, the medical evaluation showed that he was able to walk without any assistive device.  (Id.).  Plaintiff claimed that he had reduced grip strength on his right hand but

Dr. Kumar found no restriction with the range of motion in his fingers or problems with grip. (Id.). Plaintiff complained about numbness, paresthesia, and pain in his feet, but Dr. Kumar found no deformities or tenderness in both feet. Dr. Kumar found evidence of peripheral neuropathy with reduced sensation distally in lower extremities, but normal muscle strength in upper and lower extremities. (Id.). Plaintiff had some restriction in the "range of motion of the lumbar but no evidence of radiculopathy." (Id.). Thus, the consultative doctor's evaluation is consistent with the ALJ's ultimate RFC.

Furthermore, the ALJ noted that the state agency doctor's RFC was consistent with Dr. Kumar's conclusions. The state agency doctor found that Plaintiff has the ability to lift or carry up to twenty-five pounds frequently and fifty pounds occasionally. Moreover, the state agency doctor found that Plaintiff can stand or walk for six hours in an eight-hour workday and can sit for six hours in an eight-hour workday, with no limitations in his ability to reach. In sum, the medical evidence constituted a clear and convincing reason to reject Plaintiff's subjective pain testimony.

**2.    Remand Is Not Required On The Ground That The ALJ Improperly Determined Plaintiff's RFC Before Assessing The Credibility Of His Subjective Testimony**

Plaintiff argues that the ALJ improperly determined his RFC before evaluating the credibility of his subjective testimony.

(MSPC at 5-7).   However, this argument lacks merit.   After expressly acknowledging that an ALJ must consider the credibility of a claimant's subjective statements before making a RFC determination, (AR 36), the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the above residual functional capacity assessment."[3]   (AR at 37). The ALJ did not, however, end his evaluation of Plaintiff's RFC with this general conclusion.   Rather, the ALJ specifically addressed the reasons why Plaintiff's testimony was less than fully credible, such as the contradiction between his alleged limitations and reported daily activities, and the conflicts between Plaintiff's testimony and the objective medical findings in the record.   (Id.).   The ALJ also discussed, at length, the medical evidence relevant to Plaintiff's underlying impairment. (AR 37-38 (discussing Dr. Kumar's December 2010 examination, the State Agency medical consultant's Physical Residual Function Capacity Assessment, and Plaintiff's July 2012 lumbar spine MRI)).   In his decision, the ALJ expressly stated that he determined Plaintiff's RFC "[a]fter careful consideration of the entire record . . ." (AR at 36).   Reading the entire decision of the ALJ, it is clear that he only determined Plaintiff's RFC

---

[3]   The section of the ALJ's decision discussing Plaintiff's RFC begins with the following header: "After careful consideration of the entire record, the undersigned finds that the claimant has the residual function capacity to perform the full range of medium work as defined in 20 C.F.R. [§§] 404.1567(c) and 416.967(c)."

1  <u>after</u> evaluating the credibility of Plaintiff's subjective
2  testimony.

3

4       Contrary to Plaintiff's suggestion, the ALJ's RFC
5  determination consisted of far more than "meaningless
6  boilerplate[.]" (MSPC at 7). The ALJ provided ample and
7  specific reasons supporting his conclusion that Plaintiff had the
8  residual functional capacity to perform the full range of medium
9  work, and the ALJ's decision to employ the phrase "the claimant's
10 statements . . . are not credible to the extent they are
11 inconsistent with the above residual function capacity
12 assessment" is simply not proof that the ALJ discredited
13 Plaintiff's subjective testimony because it conflicted with an
14 already-determined RFC. <u>See</u> <u>Brisco v. Astrue</u>, 892 F. Supp. 2d
15 567, 586 (S.D.N.Y. 2012) (rejecting Plaintiff's argument that ALJ
16 assessed RFC before making credibility determination based on
17 statement that testimony was incredible "to the extent" it was
18 "inconsistent with the above residual function capacity
19 assessment").

20

21      The particular wording of the ALJ's decision is not, by
22 itself, evidence of harmful error, and Plaintiff has failed to
23 offer any convincing proof that the ALJ determined his RFC before
24 considering the credibility of his subjective testimony. <u>See</u>
25 <u>Rogers v. Colvin</u>, __ F. Supp. 2d __, 2014 WL 1647087, at *11
26 (N.D. Ill. April 24, 2014) (rejecting the argument that reversal
27 is justified when an ALJ employs the "boilerplate phrase" that a
28 claimant's testimony "is not credible to the extent it is

1  inconsistent with the RFC" and explaining that "this argument . .

2  . ignores [cases that have] clearly explained that what really

3  matters is whether the ALJ gave reasons for finding the plaintiff

4  not credible").  Accordingly, Plaintiff's argument must fail.

5

6         **3.   The   ALJ   Properly   Considered   Plaintiff's   Exertion**

7              **Questionnaire.**

8

9       Plaintiff claims that the ALJ did not properly consider the

10  entirety of the Exertion Questionnaire because the ALJ ignored

11  the statements that Plaintiff could not move because of fatigue.

12  However, the ALJ cited Plaintiff's Exertion Questionnaire as an

13  indication that his testimony was unreliable because the daily

14  activities described in the questionnaire were inconsistent with

15  physical limitations described in Plaintiff's testimony.  (AR

16  37).  For example, the Exertion Questionnaire indicated that

17  Plaintiff made the bed, vacuumed, washed dishes, cleaned the

18  bathroom, completed yard work and went grocery shopping. (Id.).

19  The ALJ concluded that those activities were "inconsistent with

20  his allegations of total disability."  (Id.).

21

22      The Court agrees that Plaintiff's Exertion Questionnaire

23  undermines his claim of "constant" fatigue and pain in his right

24  leg.  The ALJ's reliance on Plaintiff's daily activities, as part

25  of the ALJ's evaluation of Plaintiff's subjective testimony, was

26  proper.  See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685,

27  693 (9th Cir. 2009) (demonstrating that an ALJ may consider the

28  daily activities of a plaintiff to determine the plaintiff's

credibility); See also Molina, 674 F.3d at 1112 ("In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation[] . . . [and] . . . may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct[.]") (internal quotation marks omitted).

Similarly, that Plaintiff was able to walk several miles per day and climb several flights of stairs suggests that Plaintiff's leg pain was neither constant nor disabling. (Id.). Because Plaintiff admitted that he engaged in a range of daily activities requiring a greater degree of mobility and strength than he alleged he possessed, the ALJ properly took this conflict into account when assessing the credibility of Plaintiff's subjective testimony.

### 4. The ALJ Properly Considered The Plaintiff's Overall Demeanor And Conduct During The Administrative Hearing.

Finally, the ALJ noted that the Plaintiff's overall demeanor and conduct during the March 28, 2012 administrative hearing undermined Plaintiff's testimony regarding the severity of his symptoms. The ALJ found that Plaintiff was able to enter and exit the room without difficulty and answer questions thoroughly and clearly. (AR 38). The ALJ relied on these observations, along with other clear and convincing reasons. To conclude that Plaintiff's testimony was less than fully credible. (Id.).

1    Plaintiff claims that the ALJ erred by relying on his
2  observations at the hearing because the hearing lasted only for
3  ten minutes.  (MSPC at 10-11).    However, an ALJ may properly
4  rely on personal observations when considering a claimant's
5  subjective testimony.   See Verduzco, 188 F.3d at 1090 (stating
6  that the "inclusion of ALJ's personal observations does not
7  render the decision improper" (citing Morgan v. Comm'r of Soc.
8  Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999))). Here, the ALJ
9  correctly compared Plaintiff's conduct at the administrative
10  hearing to his alleged physical limitations in determining
11  Plaintiff's credibility.  Plaintiff stated that his right leg was
12  hurting during the hearing, but displayed no outward signs of
13  physical impairment or limiting pain.  (AR 49).  Accordingly, the
14  ALJ properly discounted Plaintiff's subjective testimony on this
15  basis.

16

17    In sum, the ALJ provided clear and convincing reasons
18  supported by substantial evidence for discounting Plaintiff's
19  subjective testimony.    Accordingly, the ALJ properly found
20  Plaintiff's subjective testimony less than fully credible, and
21  the ALJ's decision must be affirmed.
22  \\
23  \\
24  \\
25  \\
26  \\
27  \\
28  \\

### III.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  July10, 2014

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW, OR ANY OTHER LEGAL DATABASE